ORIGINAL

FILED

DEC 29 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1  Curtis G. Berkey (D.C. Bar No. 288647)
   Scott W. Williams (CA Bar No. 097966)
2  ALEXANDER, BERKEY, WILLIAMS & WEATHERS LLP
   2030 Addison Street, Suite 410
3  Berkeley, CA 94704
   Tel: (510) 548-7070
4  Fax: (510) 5487-7080
   E-mail: cberkey@abwwlaw.com
5  E-mail: swilliams@abwwlaw.com

6  Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HAUDENOSAUNEE; THE ONONDAGA NATION, | ) Case No: |
| Plaintiffs, | ) |
| v. | ) COMPLAINT FOR DECLARATORY ) AND INJUNCTIVE RELIEF |
| DIRK KEMPTHORNE, in his official capacity as Secretary of the Interior; HENRY PAULSON, in his official capacity as Secretary of the Treasury; and ROSS SWIMMER, in his official capacity as Special Trustee for American Indians, | ) |
| Defendants. | ) |

CASE NUMBER   1:06CV02254

JUDGE: Richard J. Leon

DECK TYPE: Administrative Agency Rev

DATE STAMP: 12/29/2006

## INTRODUCTION

1. This is an action to require the United States to account for its failure to fulfill its obligations to the Haudenosaunee or Six Nations Confederacy under Article VI of the Treaty of Canandaigua of 1794 to provide annually $4,500 in perpetuity for the benefit of the Haudenosaunee. The Treaty of Canandaigua is the principal legal agreement which defines the relationship between the Haudenosaunee and the United States, and the Treaty is in effect and fully enforceable today. This action seeks a declaratory judgment that an accounting is required, injunctive relief ordering the United States to provide a full accounting for the period 1794 to the present, and other relief as

required to ensure that in future years the United States accurately, expeditiously and fairly accounts for its obligation to fulfill Article VI.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and § 1362. This is an action brought by the Haudenosaunee and the Onondaga Nation. The Council of Chiefs of the Onondaga Nation is a sovereign government recognized by the Secretary of the Interior. The matter in controversy arises under the laws and treaties of the United States, namely the Treaty of Canandaigua of 1794, 7 Stat. 44; 25 U.S.C. §§ 161, 161a and 162a; 25 U.S.C. § 4001 et seq.; and the federal common law which imposes fiduciary duties on the United States to fulfill its treaty and statutory obligations to Indian nations. This Court also has subject matter jurisdiction over this action under 5 U.S.C. § 702, as an action for other than money damages against the United States and §§ 704 and 706.

3. Venue is proper in this district under 28 U.S.C.§ 1391(e) because the Defendants have their offices in this District and a substantial part of the events or omissions giving rise to this claim occurred in this district.

### PARTIES

4. Plaintiff Haudenosaunee is a confederacy, originally, of five sovereign Indian nations: the Onondaga Nation, Mohawk Nation, Oneida Nation, Cayuga Nation, and Seneca Nation. The sovereign Tuscarora Nation joined the Haudenosaunee in approximately 1712. The Haudenosaunee is called in English the "Six Nations Iroquois Confederacy." The seat or central Council Fire of the Confederacy is at Onondaga. The Onondagas are the firekeepers of the Haudenosaunee. The Haudenosaunee entered into three treaties recognized as valid by the United States: the Treaty of Fort Stanwix of 1784, the Treaty of Fort Harmar of 1789, 7 Stat. 33, and the Treaty of Canandaigua of 1794, 7 Stat. 44. The obligations of the United States under Article VI of the Treaty of Canandaigua, as well as the other articles, are owed to the Haudenosaunee and its constituent nations. This action is brought by authority of the Grand Council of Chiefs of the Haudenosaunee. The Onondaga Nation sues on its own behalf and on behalf of the Haudenosaunee.

///

5. Plaintiff Onondaga Nation is an Indian nation recognized by the United States through the Secretary of the Interior. The citizens of the Onondaga Nation reside principally on its territory or "reservation" south of Nedrow, New York. The Nation brings this action by authority of the Onondaga Council of Chiefs, the sole government of the Onondaga Nation. The government of the Onondaga Nation is recognized by the United States through the Secretary of the Interior. The relationship of the Onondaga Nation to the United States has never been terminated. The seat of the Nation is at Onondaga, south of Nedrow, New York.

6. Defendant Dirk Kempthorne is the Secretary of the Interior of the United States and charged under federal law with the responsibility to carry out treaties with Indian nations, including the Treaty of Canandaigua, to conduct relations between the Haudenosaunee and the United States, to administer federal laws applicable to Indian nations and to carry out the United States' fiduciary obligations toward Indian nations as required by federal law. Defendant Kempthorne is sued in his official capacity.

7. Defendant Henry Paulson is the Secretary of the Treasury of the United States and charged under federal law with the responsibility to hold and disburse funds belonging to Indian nations, whether appropriated by Congress to fulfill Indian treaties or derived from income produced on Indian lands, and to prepare and maintain records in connection with such funds and accountings required by federal law. Defendant Paulson is sued in his official capacity.

8. Defendant Ross Swimmer is the Special Trustee for American Indians appointed by the President pursuant to 25 U.S.C. § 4042. Defendant Swimmer's duties and responsibilities are principally described in 25 U.S.C.§ 4043, and they include, but are not limited to, the development of both standardized trust fund accounting procedures and a comprehensive strategic plan for the federal government's "trust management." 25 U.S.C. § 4043(a)(2) and (c)(2). Defendant Swimmer is sued in his official capacity.

## STATEMENT OF FACTS

9. On November 11, 1794, the Six Nations or Haudenosaunee entered into a treaty with the United States to establish a perpetual peace and friendship between the nations. Treaty of Canandaigua of 1794, 7 Stat. 44, Article I. The Treaty, one of the first made by the United States

with Indian nations, was approved by Congress and proclaimed effective by President George Washington on January 21, 1795. In the Treaty, the United States acknowledged the territorial boundaries of the member nations of the Six Nations, and both parties agreed to maintain a relationship of permanent peace and friendship. The Treaty remains in effect and its terms are fully enforceable today. The Haudenosaunee has faithfully adhered to its promises and obligations under the Treaty.

10. Article VI of the Treaty of Canandaigua provides in relevant part:

> In consideration of the peace and friendship hereby established, and of the engagements entered into by the Six Nations; and because the United States desire, with humanity and kindness, to contribute to their comfortable support; and to render the peace and friendship hereby established strong and perpetual; the United States now deliver to the Six Nations, . . . a quantity of goods of the value of ten thousand dollars. And for the same considerations, and with a view to promote the future welfare of the Six Nations, . . . the United States will add the sum of three thousand dollars to the one thousand five hundred dollars, heretofore allowed them by an article ratified by the President on the twenty-third day of April, 1792; making the whole, four thousand five hundred dollars; which shall be expended yearly forever, in purchasing clothing, domestic animals, implements of husbandry, and other utensils suited to their circumstances, and in compensating useful artificers, who shall reside with or near them, and be employed for their benefit. The immediate application of the whole annual allowance now stipulated, to be made by the superintendent appointed by the President for the affairs of the Six Nations, . . . .

7 Stat. 44, 46. Article VI obligates the United States, as consideration for the peace and friendship granted by the Haudenosaunee, to expend $4,500 each year forever for the benefit of the Six Nations for the purposes specified in the Treaty. The obligation is perpetual in duration and unconditional.

11. Upon information and belief, during most of the years from 1798 to 1832, Congress appropriated $15,000 "[f]or the payment of annuities to the Six Nations, Chickasaws, Cherokees and Creeks." Act of June 12, 1798, 1 Stat.564. The appropriation did not specify the amount that was to be dedicated for the exclusive benefit of the Six Nations separately.

12. Upon information and belief, from 1832 to 1872, Congress periodically appropriated $4,500 to the Six Nations "f[or permanent annuity, stipulated in the sixth article of the treaty of eleventh November, seventeen hundred and ninety-four . . . ." *See, e.g.*, Act of July 29, 1848, 9 Stat. 252. Upon information and belief, the appropriations were not made each and every year.

13. Upon information and belief, beginning in 1872, Congress appropriated $4,500 for the Six Nations "[f]or permanent annuity in clothing and other useful articles, per sixth article treaty of

4

November seventeenth, seventeen hundred and ninety-four. . . ." Act of May 29, 1872, 17 Stat. 165. Upon information and belief, such appropriations continued for most years until 1951.

14. In 1951, Congress appropriated "such sums as may be necessary after June 1, 1951" from "any money in the Treasury not otherwise appropriated" for the purpose of "[f]ulfilling treaties with the Senecas and the Six Nations of New York, Choctaws and Pawnees of Oklahoma, and payment to Indians of the Sioux Reservations. . . ." Act of August 31, 1951, 65 Stat. 254. The Act further provided that the Treasury appropriations were "to be expended as provided by law." *Id.* Absent an accounting, it is not known how much, if any, of these appropriations were actually paid to or for the benefit of Plaintiffs.

15. Because information regarding disbursements pursuant to Article VI of the Treaty of Canandaigua is within the exclusive custody and control of the United States, Plaintiffs do not know whether the federal government maintains trust or other funds on behalf of the Plaintiffs for the purpose of fulfilling federal obligations under the Treaty.

16. Upon information and belief, Congress has not since 1951 made any appropriation to the Six Nations specifically for the purpose of fulfilling Article VI of the Treaty of Canandaigua.

17. Today, Plaintiff Onondaga Nation, as the firekeepers of the Six Nations or Haudenosaunee, receives annually from the Bureau of Indian Affairs a piece of cloth, which represents partial fulfillment of the obligations of the United States imposed by Article VI of the Treaty of Canandaigua.

18. Upon information and belief, at some unknown time, the United States unilaterally transmuted its Article VI obligation to provide payments or property valued at $4,500 into the delivery of treaty cloth to Plaintiff Onondaga Nation. The date and time at which the United States began the practice of providing Canandaigua Treaty cloth are unknown to the Plaintiffs, because such information is within the exclusive control and custody of officials of the United States.

19. The United States has not fully and accurately accounted for the appropriations, disbursements, deliveries, custodial arrangements, investments, payments and goods distributable pursuant to its obligations to the Six Nations pursuant to Article VI of the Treaty of Canandaigua.

///

20. In 1970, the Indian Claims Commission ruled that certain individuals purporting to represent the Six Nations were entitled to recover $36,718.42 from the United States due to disallowed credits for disbursements between 1795 and 1952 pursuant to Article VI of the Treaty of Canandaigua. *Six Nations, et al. v. United States*, 23 Ind. Cl. Comm. 376 (1970). Neither the Haudenosaunee nor the Onondaga Nation expressly nor by implication authorized the named individuals to bring the suit, and the Haudenosaunee and the Onondaga Nation strongly objected to the suit once they learned of its existence. Because neither the Haudenosaunee nor the Onondaga Nation authorized the filing and prosecution of the suit, they are not bound by the rulings of the Commission. Neither the Haudenosaunee nor the Onondaga Nation has accepted payment of the award of the Commission. The Commission's ruling did not address the obligation to account for the period 1953 to the present.

21. In 1977, the Six Nations filed suit in the United States District Court to set aside the Indian Claims Commission award. The suit was dismissed on the ground that the district court did not have power to set aside the Indian Claims Commission award, which had been entered as a final judgment. *Six Nations Confederacy v. Andrus*, 447 F. Supp. 40 (D. D.C. 1977), *aff'd*, 610 F.2d 996 (D.C. Cir. 1980), *cert. denied*, 447 U.S. 922 (1980).

22. Because the United States has failed to properly account for its failure to fulfill its obligations under the Treaty of Canandaigua of 1794, and the United States has exclusive control and custody of relevant information, Plaintiffs are not able to ascertain the nature and scope of possible claims against the United States for damages or other forms of monetary relief arising from the failure to fulfill the obligations of Article VI. In order to preserve their right to seek damages against the United States within any arguably applicable limitations period, Plaintiffs filed an action in the United States Court of Federal Claims on December 28, 2006 (*The Haudenosaunee, The Onondaga Nation v. The United States*, Case No. 06-909L). The assertion of claims in that action will depend in large part on the accounting requested by Plaintiffs in this action.

///

///

///

# FIRST CLAIM FOR RELIEF

**(Failure to Provide Full, Accurate and Timely Accounting Between 1795 and Present)**

23. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-22 above.

24. The Treaty of Canandaigua, the various appropriation acts referenced above and the trust fund statutes give rise to a fiduciary duty on the part of the United States to account to the Plaintiffs for the actions of federal officials in carrying out the obligations found in Article VI of the Treaty. The United States has also assumed certain fiduciary duties by virtue of its relationship with Indian nations, including the Haudenosaunee and the Onondaga Nation. These duties are acknowledged to comprise part of the federal common law and they supplement and reinforce the Defendants' treaty and statutory duties.

25. The fiduciary obligation of the United States to account for its fulfillment of treaty stipulations includes, but is not limited to, the duty to: 1) create trust accounts to hold congressional appropriations made to carry out Article VI of the Treaty of Canandaigua; 2) insure that such appropriated monies are placed in such accounts; 3) maintain adequate records with respect to the collection and disbursement of such appropriated monies; 4) maintain adequate records with respect to the purchase and delivery of goods pursuant to Article VI; 5) maintain adequate systems and controls to protect against mistake, dishonesty and fraud; 6) provide regular, accurate and informative written accountings to the Plaintiffs; and 7) and consult regularly with the Plaintiffs regarding the appropriation, deposit, custody, and disbursement of monies and/or goods provided to fulfill federal obligations under Article VI.

26. Defendants have violated their trust duties as set forth in paragraph 25 and in other ways to be determined by failing to carry out these and other legally-mandated responsibilities during the period 1795 to the present. Plaintiffs are entitled to a declaratory judgment that the Defendants have violated their treaty, statutory and common law duties to account to the Plaintiffs for their failure to carry out Article VI of the Treaty of Canandaigua. Plaintiffs are entitled to an injunction ordering the Defendants to comply with their treaty, statutory and common law duties to account.

///

7

## SECOND CLAIM FOR RELIEF

**(Failure to Account for Investment of Appropriations in Interest Bearing Accounts)**

27. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-26 above.

28. Funds appropriated by Congress between 1795 and 1951 to fulfill obligations under the Treaty of Canandaigua are treaty funds belonging to Plaintiffs. Funds made available for the benefit and use of Plaintiffs pursuant to Congress' standing appropriation in 1951 are treaty funds belonging to Plaintiffs. Funds made available from other sources to satisfy the United States' Article VI obligation are treaty funds belonging to Plaintiffs.

29. Federal law requires that such funds be deposited in interest-bearing accounts in either the U.S. Treasury or financial institutions to the credit of the Indian nation that owns them. 25 U.S.C. §§ 161, 161a and 162a. The federal statutory duty to invest such funds and to earn interest includes the obligation to provide an accounting to the Plaintiffs regarding the deposits and investments made, the rate of interest and the amount earned.

30. Upon information and belief, Defendants have not deposited Plaintiffs' appropriated treaty funds in interest-bearing accounts in compliance with 25 U.S.C. § 161, 161a and 162a and federal common law. Nor have Defendants accounted for their handling of such funds in accordance with their statutory and common law duties to use the highest degree of care and skill in holding and disbursing such funds. As a result, Defendants have violated their statutory and common law duties, and Plaintiffs are entitled to declaratory and injunctive relief ordering Defendants to account for their handling of Plaintiffs' funds.

## THIRD CLAIM FOR RELIEF

**(Failure to Maintain Adequate System of Accounting for Future Years)**

31. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-30 above.

32. Defendants have treaty, statutory and federal common law duties to develop, implement and maintain adequate systems for comprehensive, regular, accurate and timely accounting of their fiduciary responsibilities to Indian nations, including the Haudenosaunee and the

Onondaga Nation. 25 U.S.C. § 162a(d) (enumerating Secretary of Interior's responsibilities for the proper discharge of fiduciary duties); 25 U.S.C. §§ 4041– 4044 (providing measures for the effective management of and accountability for the proper discharge of the trust responsibilities of the Secretary of the Interior to Indian nations).

33. Defendants do not now have in place policies and systems of record-keeping, reporting, reconciliation procedures and supervision to enable proper accounting to Plaintiffs for Defendants' administration of their responsibilities under Article VI of the Treaty of Canandaigua.

34. Plaintiffs are entitled to declaratory and injunctive relief ordering Defendants to develop and adopt such policies and systems in order to protect and preserve the right of the Plaintiffs to benefits under Article VI for the future in perpetuity.

**PRAYER FOR RELIEF**

35. WHEREFORE, Plaintiffs request the following relief:

   a. A declaration that Defendants have violated the Treaty of Canandaigua, federal statutes and the federal common law by failing to properly account for their performance of obligations under Article VI of the Treaty.

   b. A declaration that Defendants have violated statutory and common law duties to account for the deposit, custody, investment and disbursement of appropriations in interest-bearing accounts.

   c. An injunction ordering Defendants to provide a complete and accurate accounting of its Article VI obligations for the period 1795 to the present.

   d. An injunction ordering Defendants to properly invest and maintain trust accounts of Plaintiffs treaty funds as appropriated or otherwise made available from the United States Treasury, in compliance with Defendants' statutory and common law duties.

   e. An injunction ordering Defendants to develop, implement and maintain adequate systems for comprehensive, regular, accurate and timely accounting of their Article VI obligations in future years.

///

f.   An award of costs and attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 and other applicable federal statutes.

g.   Such other relief as the Court deems appropriate.

Dated:   December 28, 2006

Respectfully submitted,

ALEXANDER, BERKEY, WILLIAMS
& WEATHERS LLP

_____
Curtis G. Berkey (D.C. Bar No. 288647)
Scott W. Williams (CA Bar No. 097966)
2030 Addison Street, Suite 410
Berkeley, California 94704
Tel: (510) 548-7070
Fax: (510) 548-7080
E-mail:cberkey@abwwlaw.com
E-mail:swilliams@abwwlaw.com

*Attorneys for Plaintiffs*

ORIGINAL

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

The Haudenosaunee; The Onondaga Nation

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Onondaga County
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

Dirk Kempthorne, Secretary of the Interior; Henry Paulson, Secretary of the Treasury; Ross Swimmer, Special Trustee for American Indians

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Curtis G. Berkey (D.C. Bar No. 195485)
Scott W. Williams (CA Bar No. 097966)
ALEXANDER, BERKEY, WILLIAMS & WEATHERS LLP
2030 Addison Street, Suite 410
Berkeley, CA 94704
Tel: 510-548-7070

CASE NUMBER   1:06CV02254

JUDGE:  Richard J. Leon

DECK TYPE:  Administrative Agency Rev

DATE STAMP:  12/29/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊗ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
(FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ⊙ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)       OR       ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U..S.C. sections 1331 and 1362; action for an accounting against the U.S. with regard to its obligations under the Treaty of Canandaigua of 1794

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE December 27, 2006   SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

29

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.